BOWMAN, JOHN, Associate Judge.
On November 15, 2006, defendant, Daryl Tindall, was charged with three counts each of (a) Aggravated Kidnapping, (b) Lewd and Lascivious Molestation-Offend.er under 18, Victim under 12, and (c) Sexual Battery on a Child under 12 by Perpetrator under 18.
On August 8, 2008, the trial court adjudicated defendant guilty of two counts of Aggravated Kidnapping and two counts of Sexual Battery, and sentenced defendant to life in prison. Defendant has timely appealed.
Defendant raises two issues for our consideration. We find no abuse of discretion in the admission of the child hearsay statements and write only to address the issue of the aggravated kidnapping charges.
At trial, defendant moved for judgment of acquittal on the kidnapping charges at the close of the State’s case and the close of defendant’s presentation (the State had no rebuttal evidence) arguing that his actions were incidental to the alleged sexual misconduct. The trial court denied the motions. On May 7, 2008, a jury found defendant guilty of two counts of Aggravated Kidnapping, Lewd and Lascivious Molestation, and Sexual Battery. However, the trial court adjudicated defendant guilty of only two counts of Aggravated *800 Kidnapping and two counts of Sexual Battery, and sentenced defendant to life in prison.
A trial court’s denial of a motion for judgment of acquittal is subject to de novo review. Johnston v. State, 863 So.2d 271, 283 (Fla.2003).
There were two child victims in the case, E.K. and J.T.
J.T.’s Testimony
At trial, J.T. testified that, in the summer of 2006, when she was six years old, she visited her friend, Stewart, who is defendant’s nephew, on a Monday at his home. Defendant, who was sixteen years old, lived together with Stewart in the same home. After answering J.T.’s knock on the door, defendant pulled J.T. by her hair inside the home and to his bedroom, which he subsequently locked. Defendant then placed J.T. on his bed and took his and her clothes off.
Thereupon, defendant rubbed J.T. with his penis on the lips of her “cookie,” which is the name she gave to her private part. J.T. further testified that defendant told her not to tell anybody and that she did not tell anyone afterwards because she was scared. On Tuesday, J.T. visited Stewart’s house again, this time with E.K. J.T. testified that E.K. went inside the house, that defendant was with E.K. in the home, and that Stewart went inside the house and came back out.
On Wednesday, J.T. again visited Stewart’s home by herself, and after answering the door, defendant pulled J.T. by the hair, took her to his bedroom, put her on his bed, took off his clothes, and locked the door. Defendant again rubbed his penis on the lips of her “cookie” for ten minutes, and told J.T. not to tell anyone. J.T. never visited Stewart’s home again.
E.K.’s Testimony
E.K. testified that, about one week before her birthday in the summer of 2006, she visited Stewart’s home to play and that, while she was outside, Stewart told her that defendant wanted her to go inside the home. After going inside, defendant gave E.K. a bear hug, picked her up, took her to his bedroom, and locked the door. Defendant took E.K’s clothes off and unzipped his zipper. E.K. tried to stop him and screamed. Defendant held her hands up and touched E.K. with his penis in her “private spot” where she urinates from. E.K. stated that defendant’s actions lasted five to seven minutes and that, after she put her clothes on, defendant told her not to tell anyone about what had happened.
E.K. further testified that, about two weeks after her birthday on a Tuesday, she went to play with Stewart at his home and defendant again grabbed her, took her to his bedroom, took off her clothes, locked the door, and unzipped his pants. While standing up and with one hand holding E.K’s hands up and the other covering her mouth to prevent her from screaming, defendant again pushed with his penis into her private spot where she urinates from as she was on the edge of his bed with her legs apart. This ensued for about five to seven minutes, and afterwards, defendant again told E.K. not to tell anyone.
Defendant argues that he was entitled to a judgment of acquittal on the aggravated kidnapping charges because the acts which constituted kidnapping were incidental to the underlying alleged sexual misconduct. Section 787.01, Florida Statutes, provides:
(l)(a) The term “kidnapping” means forcibly, secretly, or by threat confining, abducting, or imprisoning another person against her or his will and without lawful authority, with intent to:
*801 1. Hold for ransom or reward or as a shield or hostage.
2. Commit or facilitate commission of any felony.
3. Inflict bodily harm upon or to terrorize the victim or another person.
4. Interfere with the performance of any governmental or political function, (b) Confinement of a child under the age of 13 is against her or his will within the meaning of this subsection if such confinement is without the consent of her or his parent or legal guardian.
(2) A person who kidnaps a person is guilty of a felony of the first degree, punishable by imprisonment for a term of years not exceeding life or as provided in s. 775.082, s. 775.083, or s. 775.084.
(3) (a) A person who commits the offense of kidnapping upon a child under the age of IS and who, in the course of committing the offense, commits one or more of the following:
1. Aggravated child abuse, as defined in s. 827.03;
2. Sexual battery, as defined in chapter 794-, against the child;
3. Lewd or lascivious battery, lervd or lascivious molestation, lewd or- lascivious conduct, or le-wd or lascivious exhibition, in violation of s. 800.04 or s. 847.0135(5);
4. A violation of s. 796.03 or s. 796.04, relating to prostitution, upon the child; or
5. Exploitation of the child or allowing the child to be exploited, in violation of s. 450.151, commits a life felony, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
(b) Pursuant to s. 775.021(4), nothing contained herein shall be construed to prohibit the imposition of separate judgments and sentences for the life felony described in paragraph (a) and for each separate offense enumerated in subparagraphs (a)l.-5.
§ 787.01, Fla. Stat. (2008) (emphasis added).
This court has held that, under Faison v. State, 426 So.2d 963 (Fla.1983), we “must determine whether a defendant’s conduct amounts to a confinement crime separate from other criminal charges.” Essex v. State, 917 So.2d 953, 956 (Fla. 4th DCA 2005).
In Mobley v. State, 409 So.2d 1031, 1034 (Fla.1982), the Florida Supreme Court observed that a literal construction of a kidnapping statute would potentially convert almost any forcible felony into kidnapping. The court adopted the view that the kidnapping statute does not apply to unlawful confinement or movements that are “incidental to other felonies.” Id. at 1034-37.
Later, in Faison, the supreme court announced a multi-part test for determining whether a particular confinement or movement during the commission of another crime constitutes kidnapping.
In such situations, the confinement or movement:
(a) Must not be slight, inconsequential and merely incidental to the other crime;
(b) Must not be of the kind inherent in the nature of the other crime; and
(c) Must have some significance independent of the other crime in that it makes the other crime substantially easier to [commit] or substantially lessens the risk of detection.
Faison, 426 So.2d at 965 (citing State v. Buggs, 219 Kan. 203, 547 P.2d 720, 731 (1976)).
In the case at bar, both victims were grabbed and taken to another room in the *802 residence. The court, in Formor v. State, 676 So.2d 1013, 1014-15 (Fla. 5th DCA 1996), found the confinement to be incidental to robbery where the defendant moved the victims three to six feet from bedrooms to bathrooms. Kirtsey v. State, 511 So.2d 744, 745 (Fla. 5th DCA 1987) involved the robbery of two store employees while closing the store. “One of the employees was tied up and moved about the interior of the store.” Id. The other was forced at gun point to open the safe. Id. The court, in reversing the kidnapping conviction, found that “while these acts were not inherent in the offense of robbery, ... and arguably may have made the attempted robbery easier to commit, ... the acts were slight and merely incidental to the robbery offense....” Id. The court further noted that the entire criminal episode occurred within the interior of the store. See id. The supreme court further clarified Kirtsey in Berry v. State, stating that “it is the confinement of the victims rather than their movement which justifies the kidnapping conviction.” 668 So.2d 967, 970 (Fla.1996).
The confinement of the victims by defendant here lasted only so long as the actual battery, upon which the victims got dressed and left. There seems to be a small distinction between moving a victim by physical force and movement by threat of a deadly weapon. In Sanders v. State, 905 So.2d 271, 272 (Fla. 2d DCA 2005), the victim was held in her apartment for three hours with the Defendant demanding sex. Eventually, the Defendant threatened the victim with a knife before the victim acquiesced to the demand. Id. He later allowed the victim to use the bathroom, closed the door and left. Id. at 273. The court found these facts did not support a “confinement” separate to support a charge of kidnapping. Id. at 274-75. The defendant “obviously could not have accomplished the sexual battery without the victim’s presence. In other words, the victim’s confinement was the sort that, though not necessary to the underlying felony, was likely to naturally accompany it.” Id. at 274. The Sanders court placed emphasis on the fact the victim was not confined beyond the actual battery or left unable to move. Id. at 274-75. “[T]he victim’s confinement in the bathroom ceased once Sanders left the apartment, and the victim was not left in a precarious and vulnerable state.” Id. at 275.
In Gray v. State, 939 So.2d 1095, 1096 (Fla. 1st DCA 2006), Gray entered store wearing a mask, seized the store clerk at the counter by the hair, and pulled her to an office where the keys to the store were located. After obtaining the keys, he then pulled her to the front door and ordered her to lock the doors, leaving the keys in the front door. Id. Thereafter, he forced her behind the counter to open the registers. Id. Finally, he ordered the victim to lie down, remove her clothes, and warned her not to move as his friend, who allegedly was also inside the store, would “blow her head off.” Id.
The clerk heard the keys jingle and the doorbell ring, and after twenty (20) seconds she pressed the silent alarm. Id. The court observed “[wjhile Gray made threats on her life, he did not bind her. Notwithstanding his directions to the clerk requiring her to lock the store and remove her clothes, such acts did not extend beyond the actual commission of the robbery, because when Gray left the store, the door was unlocked with the victim’s clothes inside, thereby enabling her to dress immediately. As such her confinement did not exceed the scope of the robbery.” Id. at 1097.
Similarly, the victims here were taken from the front door of the house to a bedroom. Each was held in the room for *803 only so long as the actual battery occurred and then released.
The supreme court’s decision in Berry seems very illustrative to the very facts of this case. In Berry, the victims were forced from room to room within the apartment, and at the conclusion of the robbery, the victims were tied up and left facing down on the floor. 668 So.2d at 968. The court found this confinement was neither slight nor inconsequential under the first primary test of Faison. Id. The court went on to construe this prong “to mean that there can be no kidnapping where the only confinement involved is the sort that, though not necessary to the underlying felony, is likely to naturally accompany it.” Id. at 969. The court went on to illustrate an example which fit the facts of our case. Id.
For example, if the defendant “had confined the victims by simply holding them at gunpoint, or if the robbers had moved the victims to a different room in the apartment, closed the door, and ordered them not to come out, the kidnapping conviction could not stand.” Id.
In examining the second prong of Fai-son, the court concluded that binding of the victims was a confinement, not inherent in the crime of robbery, as it was not necessary to tie up the victim in order to commit the robbery. Id.
Here, the victims were held only during the course of the battery, which would inherently occur during the course of any such battery. Neither victim was ever tied up or restrained beyond the time of the actual battery. The second prong of Faison is likewise not met.
“A conviction is fundamentally erroneous when the facts affirmatively proven by the State simply do not constitute the charged offense as a matter of law.” Griffin v. State, 705 So.2d 572, 574 (Fla. 4th DCA 1998). As defendant here did not commit the crime of kidnapping, his conviction and sentence constitutes fundamental error for which we reverse and remand for further proceedings.

Reversed and Remanded.

HAZOURI, J., concurs.
FARMER, J., dissents with opinion.