DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**DARYL LEVON TINDALL,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D19-2215

[January 27, 2021]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Okeechobee County; Lawrence Michael Mirman, Judge; L.T. Case No. 47-2006-CF-000900-A.

Carey Haughwout, Public Defender, and Paul Edward Petillo, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Anesha Worthy, Assistant Attorney General, West Palm Beach, for appellee.

BELL, CAROLYN, Associate Judge.

Daryl Levon Tindall ("Defendant") appeals his life sentence, imposed after a second resentencing, for crimes committed while he was a juvenile. While Defendant raises a number of issues on appeal, we address only one, as it is dispositive: Whether, in pronouncing Defendant's sentence, the trial court erred in relying upon its own opinion of Defendant's mental state in the face of contradictory expert opinion evidence. For the reasons set forth below, we hold that it did and reverse for resentencing before a different judge.

In 2008, Defendant was found guilty of two counts of kidnapping and two counts of sexual battery on a victim less than twelve years of age after a jury trial. The victims were two girls, one aged six and one aged seven. Defendant was sixteen years old at the time of the offenses. As to one victim, testimony at trial established that he pulled her by the hair into his bedroom, took off her clothes, and touched her in her private area while touching himself. As to the other victim, testimony at trial established that he picked her up, carried her to his bedroom, and touched her with

his penis in her private area. Both victims testified the Defendant told them not to tell anyone what happened. Defendant had access to both victims when they came to play with Defendant's nephew, who lived in the same house as Defendant.

Defendant was initially sentenced to life imprisonment. He successfully appealed his sentence twice, and was resentenced twice. *See Tindall v. State*, 45 So. 3d 799 (Fla. 4th DCA 2010); *Tindall v. State*, 41 Fla. L. Weekly S453 (Fla. Oct. 13, 2016). This appeal follows the second resentencing, which took place on July 10, 2019. At that resentencing, the trial court sentenced Defendant to two terms of life imprisonment, with review as provided by law.

At the 2019 resentencing, the trial court took judicial notice of evidence from the trial and the two previous sentencing hearings. At the first resentencing, Defendant called two expert witnesses, and at the 2019 resentencing, Defendant called a third expert witness.

The first expert was a licensed psychologist. She testified that she administered a personality test and a psychopathy test, and reviewed Defendant's records from the Department of Corrections ("DOC"), school, and an evaluation and data from a neuropsychologist who evaluated Defendant. She opined that she did not find any evidence of a personality disorder, sociopathy, psychopathy, paraphilia, or sexual deviancy in Defendant.

She also testified that she did not see typical behavior associated with an increased risk for recidivism in Defendant's case, such as a male victim and predatory actions like abducting victims or victimizing strangers. The first expert also discussed, in general:

> *[M]ost adolescent males who commit sex offenses do not go on to commit further sex offenses, it's a myth that a juvenile grows into an adult sex offender,* the overwhelming majority of adult male sex offenders never committed a juvenile sex offense, so, it's -- it's not a progression and most juveniles who are caught, arrested, sanctioned, punished in some way never go on to commit another sex offense. . . . The two [known variables] that have the strongest correlation, but are very small correlations still, but are the best that we have, are that that general antisocial orientation, the violating of norms repeatedly, getting over on other people where I would expect to see a lot of [disciplinary referrals] in prison, getting involved

2

in selling drugs, making alcohol in prison, running scams, fighting, all of those kinds of behaviors.

(emphasis added).

She explained that Defendant did not exhibit behaviors that would be alarming, and that he had received only four disciplinary referrals in his four years in prison. She stated that the lack of numerous disciplinary referrals was significant because Defendant went to prison when he was eighteen years old, was sentenced to life without the possibility of parole, so he had "nothing to lose," and under that type of scenario, most people act out. She further testified that "if [someone has] a sexual disorder, it doesn't get checked at the door when they're admitted to DOC, it's going to manifest itself somehow in the prison setting and we don't have any evidence of that with" Defendant. She concluded her direct examination with: "I've evaluated over 3,000 people in my career, this young man poses -- and, of course, I can't give any guarantees, this young man poses extremely low risk for all of the -- the reasons that I've already mentioned."

Defendant's second expert witness was a neuropsychologist who testified to the differences between an adolescent brain and an adult brain. She said that she interviewed Defendant for three or four hours, and conducted skill testing, such as memory, attention and concentration, spatial skill, visual problem solving, and language tasks. She found it significant that Defendant was able to earn his GED in prison because it showed "a level of behavioral stability." She said Defendant also did not exhibit impulsivity troubles or antisocial behaviors. Consistent with the first expert, the second expert testified that "the important thing that stands out for me in this case would be the -- the utter lack of -- of other comorbid diagnoses," meaning a lack of diagnosed disorders.

The third expert, called at the 2019 hearing, was a clinical and forensic psychologist who had worked with sex offenders for more than twenty years. She testified that she met with Defendant, and also reviewed the arrest affidavits, victim statements, Defendant's school records, and the 2012 resentencing hearing, including the testimonies of the first two experts. She said she did not repeat the tests done by the previous doctors, but did administer a PCL-R test (Psychopathy Checklist – Revised), which looks for indicators of psychopathy, and a mini mental status exam. She said that she could not perform a risk assessment, however, because Defendant was no longer a juvenile (under the age of 18), so she could not do a juvenile risk assessment, and she also could not do an adult risk assessment, because Defendant committed his crimes as

a juvenile.  There was no testimony about any other tests that would be relevant to Defendant's case.

Consistent with the first two experts, the third expert opined that Defendant did not have a diagnosable sexual disorder, antisocial personality disorder, or any antisocial traits.  When asked whether the facts of the specific offense Defendant committed had any correspondence to Defendant's risk to offend, she responded that "thousands and thousands of studies" showed that after a juvenile is sanctioned by a court, "we just don't see them reoffending. . . . [E]ven without treatment, sometimes they just spon -- spontaneously stop, usually due to maturation."

The third expert agreed with the first expert's statement from the 2012 resentencing, and testified that if someone has a sexual disorder, that person will act out, in custody or not, and although the acting out may materialize differently in custody, there would still be some revealing behavior.  The State questioned the fact that Defendant's crimes were committed against young females, and noted that Defendant did not have access to young females while in prison.  The third expert agreed, but said that if someone is attracted to prepubescent children, then there is usually evidence of them possessing or trying to obtain child pornography, or trying to groom the younger inmates while in prison, both of which would lead to disciplinary referrals.  She also stated that it was relevant that Defendant's victims were females and were not strangers.  She said these factors indicated that Defendant was less likely to reoffend.  Overall, she found nothing to indicate he was a danger to the community.

The State also pointed out that there was a comment in one of Defendant's school records that indicated that before he committed his crimes, he had made comments of a sexual nature towards other students.  The third expert testified that it would make sense that the verbalization could lead to action (his crimes), but after sanction, there were no incidents from Defendant.  The third expert concluded that, although she did not have a crystal ball, she did not "believe that [Defendant] will ever sexually reoffend again."

The State did not call any expert witnesses.

4

After considering the testimony of the experts, the trial court found, in relevant part, as follows:

**The defendant's age, maturity, intellectual capacity, and mental and emotional health at the time of the offense.**

. . . . With regard to his mental health, *the court believes he suffers from an urge to molest little girls.* There is nothing else significant to note in this area.

. . . .

**The possibility of rehabilitating the defendant.**

No doubt this is the most important factor in this case.

Put simply, the nature of these crimes is such that *the court is of the strongly held opinion that they reflect an ingrained, immutable propensity to commit pedophiliac crimes.* It is true that the defense has placed before the court evidence which purports to be in contradiction of this finding. The court commends defense counsel for zealously putting forward the defendant's position.

However, the court finds this evidence not to be credible in this case and rejects it in this case. The court rejects this evidence because the court finds 1) the expert witness testimony was to some degree successfully impeached, and 2) *the opinions are at odds with common sense inferences deriving from the acts of the defendant which the court deems to be competent, substantial evidence.*

The court notes that there was no testing done on the defendant specifically, rather than generally, geared to determine pedophilic proclivity rather than sexual deviance generally; namely, testing specifically relating to pedophilic stimulation. To be clear, there was no direct testimony or evidence that he's not attracted to little girls. The court understands that there was much testing relating generally to sexual deviance, but not the specific testing the court is noting.

5

*There was testimony that though he has committed a sexual crime, he does not have a disorder. This testimony is patently unreliable in this case. Normal people without sexual disorders, do not rape little girls.*

The fact that the defendant has not acted out sexually in prison ignores the obvious fact that there are no little girls in prison. An eighteen year old male is not the same as a little girl to one whose sexual preference is little girls. That is common sense.

The court has seen many cases involving prohibited acts involving minors. In only a few cases would this court make a finding of an ingrained immutable propensity to commit pedophilic crimes. Put simply, this case is one of those case [sic]. This is not a crime involving sexual improprieties, committed by a juvenile that can be explained with age and immaturity. The court has seen many of those cases. The age of the defendant, sixteen, and the age of the victims, under eight is consistent with the court's view, and inconsistent with the experts' opinions. The forcible nature of the acts also belies the experts' opinions. Additionally, there is a note in the defendant's school records reflecting inappropriate sexual comments towards other children. The defendant's act of warning or threatening the victims not to tell is also consistent with the court's view and inconsistent with the expert testimony. That the acts involved multiple victims on separate occasions also supports the court's view.

To be absolutely clear, the court is completely open minded to expert testimony in general, including of course, sexual cases. Moreover, the court has seriously pondered this evidence consistent with its conscience to do justice. However, there are certain cases in which the facts themselves belie the credibility of expert opinion. The court, which generally does rely upon psychiatric expert testimony, like a juror, can treat expert testimony like the testimony of any witness. The court can believe or disbelieve all or any part of any witness's testimony, including that of an expert witness. The court wishes to make absolutely clear that it does not possess some type of ignorant prejudice towards psychiatric testimony, quite the contrary. Rather, the court rejects the testimony in this particular, unique case for reasons already expressed.

6

> In the interest of truth and justice, the court has expressed itself completely frankly. This also facilitates appellate review. Were a higher court to believe that upon this record this court does not possess substantial, competent evidence to sentence as it is herein, then that appellate court can remand this case for a different sentence before a different judge. The court cannot violate its conscience and its honest evaluation of the evidence in this matter by accepting testimony that it honestly intellectually rejects.

(emphases added). Defendant gave notice of appeal.

## Analysis

Defendant argues that the trial court erred in rejecting expert testimony and substituting its own opinion in resentencing Defendant. "The decision to accept or reject expert testimony is reviewed under an abuse of discretion standard." *Beach Cmty. Bank v. First Brownsville Co.*, 85 So. 3d 1119, 1121 (Fla. 1st DCA 2012).

Defendant's 2019 resentencing occurred pursuant to section 921.1401, Florida Statutes (2014). Section 921.1401 contains certain factors that a trial court "shall consider" "[i]n determining whether life imprisonment or a term of years equal to life imprisonment is an appropriate sentence" for a juvenile offender. § 921.1401(2), Fla. Stat. (2014). In making its determination under the factors listed in section 921.1401(2), the trial court considered, and ultimately rejected, the testimony of three expert witnesses called by Defendant.

"The circuit court has discretion to accept or reject expert testimony." *Franqui v. State*, 59 So. 3d 82, 92 (Fla. 2011). A "trial court is entitled to reject apparently unrebutted testimony of a defense mental health expert if the trial court finds that the facts do not support the testimony." *Durousseau v. State*, 55 So. 3d 543, 560 (Fla. 2010). A trial judge cannot, however, "reject an uncontroverted expert opinion regarding a medical diagnosis in favor his or her own unqualified lay opinion." *Id.* at 561. "Trial judges have broad discretion in considering unrebutted expert testimony; however, the rejection of the expert testimony must have a rational basis, such as conflict with other evidence, credibility or impeachment of the witness, or other reasons." *Franqui*, 59 So. 3d at 92 (quoting *Williams v. State*, 37 So. 3d 187, 204 (Fla. 2010)). "[T]he trial court may not pit its judgment against that of an expert on highly technical matters." *Fla. E. Coast Ry. v. Beaver St. Fisheries, Inc.*, 537 So. 2d 1065,

7

1069 (Fla. 1st DCA 1989). "Instead, the court can only reject undisputed testimony from an expert when it either concerns technical evidence and 'is so palpably incredible, illogical, and unreasonable as to be unworthy of belief or otherwise open to doubt[,]' or when it concerns non-expert matters and is disputed by lay testimony." *Freeman v. State*, 45 Fla. L. Weekly D1709, D1709 (Fla. 5th DCA July 17, 2020) (alteration in original) (quoting *Fla. E. Coast Ry.*, 537 So. 2d at 1070). A "trial court . . . cannot arbitrarily reject unrebutted expert testimony." *Wiederhold v. Wiederhold*, 696 So. 2d 923, 924 (Fla. 4th DCA 1997).

In the recent case of *Freeman*, the Fifth District reversed when a trial judge rejected unrebutted expert testimony similar to that at issue here. 45 Fla. L. Weekly at D1709. *Freeman* involved a trial court's consideration of a petitioner's discharge from involuntary commitment under the Jimmy Ryce Act. *Id.* Although the context was different from that presented here, the situation is strikingly similar – the rejection of unrebutted expert opinion testimony on the issue of rehabilitation of an adult who committed sexual crimes as a juvenile, and the likelihood of such an individual engaging in future acts of sexual violence. *Id.* The *Freeman* court held that, absent a reasonable explanation for doing so, such as impeachment of a witness or conflict with other evidence, the trial court was required to accept the unchallenged expert testimony on these issues. *Id.*

In the instant case, the trial court relied upon its "strongly held opinion" that the nature of Defendant's juvenile crimes "reflect an ingrained, immutable propensity to commit pedophiliac crimes," and that Defendant had a sexual disorder because "[n]ormal people, without sexual disorders, do not rape little girls."

These unsupported opinions are directly contrary to the testimony of all three expert witnesses, each of whom testified they found no evidence of any such propensity or diagnosable disorders. The trial court rejected their opinions by finding they were "patently unreliable" and "at odds with common sense inferences deriving from the acts of [Defendant]." In justifying his position, the trial judge referenced Defendant's failure to provide specific testing "geared to determine pedophiliac proclivity rather than sexual deviance generally." There was no evidence, however, that such testing existed, was available, or was relevant.

As in *Freeman*, the trial court substituted its own determination about Defendant's mental condition and based its ultimate decision on its unsupported opinion – an opinion directly contradicted by expert testimony. Diagnosing an individual with a mental disorder is precisely the type of highly technical matter about which a "court may not pit its

8

judgment against that of an expert." *Freeman*, 45 Fla. L. Weekly at D1709 (quoting *Fla. E. Coast Ry.*, 537 So. 2d at 1069); *see also In re Standard Jury Instructions in Criminal Cases - Reports No. 2005-2*, 22 So. 3d 17, 22 (Fla. 2009) ("As for defining the term 'mental disorder or disability,' this is a technical matter that we will not undertake on our own motion.").

This case is decidedly different from *Durousseau*, relied on by the State. In *Durousseau*, the Florida Supreme Court held that a trial court did not abuse its discretion in rejecting an unrebutted expert opinion regarding a defendant's mental state in the mitigation phase of a death penalty case. 55 So. 3d at 563. The trial judge relied upon facts that were presented to the court but were not considered by the expert in forming her opinion. *Id.* In this case, although the trial judge stated that the experts were "to some degree successfully impeached," each of the facts relied upon by the trial court was specifically refuted and explained by the experts. No contrary testimony was presented.

Nor was the expert testimony here "so palpably incredible, illogical, and unreasonable as to be unworthy of belief or otherwise open to doubt." *See Freeman*, 45 Fla. L. Weekly at D1709 (quoting *Fla. E. Coast Ry.*, 537 So. 2d at 1070). In fact, the experts' opinions in this case parallel general research about juvenile conduct accepted by the Supreme Court of the United States. In *Graham v. Florida*, 560 U.S. 48 (2010), the seminal Supreme Court case on sentencing juveniles to life without parole for non-homicidal conduct, the Court discussed how "developments in psychology and brain science . . . show fundamental differences between juvenile and adult minds," and that the "parts of the brain involved in behavior control continue to mature through late adolescence." *Id.* at 68. Consistent with the experts in this case, the *Graham* Court noted that "[j]uveniles are more capable of change than are adults, and their actions are less likely to be evidence of 'irretrievably depraved character' than are the actions of adults." *Id.* (quoting *Roper v. Simmons*, 543 U.S. 551, 570 (2005)).

We find, therefore, that the trial court's opinion that Defendant had an "immutable" sexual disorder, absent a diagnosis by any testifying expert, cannot stand as a rationale for its sentence in this case. On this record, there was no basis for the trial court to substitute its interpretation of the facts for that of the experts. The trial court erred in rejecting expert testimony regarding the Defendant's mental status in favor of its own opinion. *See Durousseau*, 55 So. 3d at 561 ("A trial judge cannot reject an uncontroverted expert opinion regarding a medical diagnosis in favor his or her own unqualified lay opinion."). Accordingly, we reverse and remand. Additionally, given the trial court's express position that it cannot accept

the expert evidence in this case, the case is remanded for resentencing before a different judge.

*Reversed and Remanded for resentencing* before a different judge.

GROSS and CIKLIN, JJ., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**